UNITED STATES of America

v.

Leonard J. SCALIA et al., Appellants
in No. 72–1047.

Appeal of Frank CATANIO,
in No. 72–1046.

Nos. 72–1046, 72–1047.

United States Court of Appeals,
Third Circuit.

Argued June 5, 1972.

Decided June 26, 1972.

Leonard Meyerson, Miller, Hochman, Meyerson & Miller, Jersey City, N. J., for appellant Frank Catanio.

Harvey Weissbard, Querques, Isles & Weissbard, Orange, N. J., for appellant Leonard J. Scalia.

John J. Barry, Asst. U. S. Atty., Newark, N. J., for appellee.

Before SEITZ, Chief Judge, and GIBBONS and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

After a mistrial defendants, Scalia and Catanio, were convicted by a jury on an indictment charging illegal entry of a U.S. Post Office.

On the evening of Sunday, December 22, 1968 at around 11 p.m., Secaucus, New Jersey police officers, responding to a call, investigated the U.S. Post Office at Plaza Center in Secaucus. One of the officers, viewing the illuminated interior through the glass part of the rear doors, observed two men crouched near the safe. The officer was able to identify one of the men as the defendant Scalia. Shortly after this observation, the officers observed five or six men fleeing from the building; one group of three ran across the parking lot and toward an adjacent road. The other group of either two or three men jumped from the roof of an adjoining building onto a storage tank and from there into a weed field. A police officer identified Guiamano, who has already pleaded guilty to the charge, as one of the men who fled into the field.

Two of the policemen searched the meadow and discovered Guiamano lying in the weeds close to the building. The defendant Catanio was discovered lying in the weeds some fifteen feet away from Guiamano. On being discovered, both men claimed to have been walking in the vicinity when they heard shorts fired and took cover in the weeds. The area of the Plaza Center was nearly deserted that night and it had been raining. Both Guiamano and Catanio were without raincoats but wore brown working gloves.

On this appeal, both Scalia and Catanio claim the government's summation prejudiced their rights to a fair trial.

■■ Catanio argues that reference in the government's summation to the statements Catanio made to the officer when he was discovered in the weeds tended to call attention to the fact that Catanio did not testify. The rule is that a prosecutor may recall defendant's arrest statements to the jury and even comment on their significance, but the prosecutor cannot do so in such a way as to suggest that the defendant should have taken the stand to explain the statements. United States v. Payne, 299 F. Supp. 256 (W.D. Pa. 1969). In this case the prosecutor's comments did not go beyond attempts to discredit the veracity of Catanio's arrest statements by pointing out to the jury the inappropriateness of those statements under the existing circumstances. Nothing was said which the jury could construe as a suggestion that Catanio should have testified.

■■ Catanio also claims to have been denied a fair trial because of remarks made in the government's summation about the existence of certain evidence not used at the trial. At the first trial the government called a technician who testified as to the results of certain laboratory analyses made on defendants' clothing. The tests were conducted to find traces of substances found inside the post office. Apparently, the testimony of the technician was inconclusive in this regard. On retrial the technician was not called by the government. In summation defense counsel brought to the jury's attention that, while the government possessed lab analyses of the clothing, the technician was not called to the stand. Presumably, this strategy was intended to raise the inference that the government was hiding something unfavorable to its case from the jury.

In the prosecutor's summation, he said:

"The other aspect, of course, is a question of what happened to the clothes when they were sent to Washington. It's suggested that if the clothing had been, let's say, analyzed and showed conclusively that these men had been inside the post office the government would have produced that proof. And I think it is a fair assumption for you to make that if the government had had competent, admissible evidence of a chemical or whatever analysis of these clothing to prove that fact then there would have been evidence of it produced here. But to take the other long step, the idea that we're trying to supress [sic] some-

thing or hide something, I suggest isn't fair. Now, like Mr. Meyerson, I'm not going to ask you to guess, but I am going to suggest that what he did was ask you to guess that the results of this examination, however it was conducted, would exonerate Mr. Catanio or Mr. Scalia. And I'm going to tell you, ladies and gentlemen, that should that have been the case it would of course have been the government's duty to inform counsel for the defendants of this fact, and I suggest you would have heard about it, but you didn't.
. . . . ."

There is little doubt that reference by a party to evidence it might have produced to buttress its case but did not is improper. Kitchell v. United States, 354 F.2d 715 (1st Cir. 1965), cert. denied, 384 U.S. 1011, 86 S.Ct. 1970, 16 L.Ed.2d 1032 (1966). If these remarks by the prosecutor constitute such a reference there would clearly be error. However, the comments quoted above do not fall into this category. The government sought to counter the defense argument that failure to produce the evidence shows that it must have been exonerative of the defendants. To counter the argument without running afoul of the rule against referring to favorable unused evidence, the government actually conceded that the evidence was not implicatory. In addition, the government averred that any such test results could not have been exonerative since, had that been the case, the government would have had a duty to reveal the results to the defense. At most, therefore, the government made a claim that the evidence was neutral. Such a claim does not have the prejudicial effect of a claim that some unused evidence positively favored the government's case. We do disapprove statements by the prosecutor assuring the jury that the government always does its duty. However, we do not find reversible error.

Under the circumstances the Court cannot attribute the damaging impact to defendants' rights ordinarily expected from the prosecutor's comments. What-ever impact those comments may here have had was more than outweighed by the trial court's missing witness instruction and defense counsel's arguments. Therefore, there is no reversible error in this point of the case.

Other claims of error have been considered and are deemed insufficient to call for reversal of the convictions.

The judgment of the district court will be affirmed.